PICKRON, administratrix, *et al. v.* PICKRON *et al.*

1. Where a husband, acting as agent for his wife, exchanged a tract of land belonging to her for another tract, thereby effecting a purchase for her of the land received in exchange, but took title in himself to the land so purchased, the wife, upon discovering this, would be entitled to have

42

a resulting trust declared. If the husband promised to have the property conveyed to his wife, and she, discovering that this had not been done, demanded a deed placing title in her, but he failed and neglected to execute and deliver such deed during her life, the representative of her estate, or her heirs, could maintain a suit against him, or against his representatives after his death, seeking a decree placing the title in the estate of the wife.

2. An administrator can not sell property held adversely to the estate by a third person; he must first recover possession.

3. Where an administrator is seeking to sell property as a part of the estate of his intestate, but the same is held adversely, those holding it may maintain a suit for injunction, there being other facts alleged to show grounds of equitable jurisdiction. ,

4. The petition is defective in the present case in the following particulars:

(*a*) In a description of the land the title to which the petitioners seek to have decreed in themselves.

(*b*) In failing distinctly to allege and set forth the clause of a conveyance of an interest in the property to petitioners, it being alleged in one place in the petition that the father was to have "the deeds to said land . . made to her [petitioners' mother], and at her death to her children," and in another place that "as the heirs at law of the said Mrs. Kitty Pickron the legal as well as the equitable title to the said land above-described is in them [petitioners];" and it is prayed, in part, "that the title to said land described in said deed be decreed in your petitioners as the heirs at law of Mrs. Kitty Pickron, deceased, and not in S. L. Pickron." The quoted allegations from the petition are inconsistent, irreconcilable, and confused, and it is impossible to deduce from them what title the petitioners had in the lands.

(*c*) It is also prayed, in part, that "the said deed from B. A. Phillips to S. L. Pickron, a copy of which is hereto attached, be delivered up and canceled, or that the same may be reformed by making [petitioners' mother], or your petitioners as her heirs at law, the grantee therein." These allegations and prayers are utterly irreconcilable, conflicting, and confused as to the quantity of interest in the land claimed by petitioners and the time of its enjoyment; and there is also a confusion in the prayers as to the remedy sought.

No. 391. ·FEBRUARY 15, 1918.

Equitable petition. Before Judge Worrill. Miller superior court. May 19, 1917.

W. A. Pickron and others, as the children of Mrs. Kitty Pickron and her only heirs at law, brought their petition against Mrs. Sallie Pickron as administratrix of S. L. Pickron, and against B. A. Phillips, alleging as follows: Mrs. Kitty Pickron owned a certain house and lot in Early county, of the value of $1500. In the fall of the year 1901 she consented to swap this property to B. A. Phillips, for the south half of lot of land 40 in the 13th district of Miller county, "which said trade and exchange was consum-

mated on October 25, 1901; and that the husband of the said Mrs. Kitty Pickron, S. L. Pickron, acted for her in the consummation and negotiation of said trade and exchange." Mrs. Kitty Pickron was illiterate and could not read or write, and entrusted to her husband the making of the exchange of the two pieces of property and "to have the deeds to the said land in Miller county made to her and at her death to her children; but, instead of doing so, the said S. L. Pickron had the defendant B. A. Phillips to make the deed to said land in Miller county, above described, to himself; . . and that as soon as the said Mrs. Kitty Pickron discovered that the deed was not made to her, she at once protested, and S. L. Pickron promised her that he would make a deed to her to said land, and afterwards told her that he had done so, causing Mrs. Kitty Pickron to believe that the title to said land was in her, which she relied upon and continued to believe as long as she lived." While the deed to the Miller county property recites a consideration of $470 paid, S. L. Pickron paid nothing to the grantor, but the sole consideration was the deed of Mrs. Kitty Pickron conveying to Phillips the Early county property, of which she was the sole owner, and in which her husband had no interest. Petitioners, as the heirs at law of their mother, have the legal as well as the equitable title to the Miller county land, and they are now in possession of 62½ acres of said land. Mrs. Kitty Pickron died in 1903, and thereafter S. L. Pickron remarried. He died in 1916, and after his death his widow, Mrs. Sallie Pickron, and her children moved away from the land, leaving petitioners in possession thereof; "but before the death of S. L. Pickron he sold to one of your petitioners, J. C. Pickron, 62½ acres of land, which was paid for by the said J. C. Pickron to the said S. L. Pickron, and the said J. C. Pickron was immediately put in possession of the same and continued in possession up to the present date." Mrs. Sallie Pickron was appointed administratrix upon the estate of S. L. Pickron; and she, alleging that the 62½ acres of land "is the remaining one half after selling the land above referred to" to J. C. Pickron, has applied for an order to sell said land for the purpose of distribution among the heirs of S. L. Pickron, which order has been granted by the ordinary of Miller county, and the land is advertised to be sold on the first Tuesday in February, 1917. Petitioners are in adverse possession, claiming title to the land, and

the administratrix is seeking to sell it without first recovering possession thereof. There was no administration upon the estate of Mrs. Kitty Pickron, and she died intestate; and there is no guardian for the minor plaintiffs, for whom S. B. Pickron sues as next friend. Petitioners pray: for process; that the deed from Phillips to S. L. Pickron be delivered up and canceled, "or that the same may be reformed by making Mrs. Kitty Pickron, or your petitioners as her heirs at law, the grantee therein; that the title to said land described in said deed be decreed in your petitioners as the heirs at law of Mrs. Kitty Pickron, deceased, and not in S. L. Pickron;" that Mrs. Sallie Pickron be enjoined from selling the land; and for general relief. The defendants filed demurrers, general and special, to the petition, which were overruled, and the defendants excepted.

*W. I. Geer,* for plaintiffs in error. *P. D. Rich,* contra.

BECK, P. J. (After the foregoing statement.)

1. We are of the opinion that the court properly overruled the general demurrer. If, as alleged in this petition, Mrs. Kitty Pickron entrusted to her husband the making of an exchange of a piece of property of which she was the sole owner, for another piece of property, it being understood that her husband, as her agent, should take a conveyance of the latter piece of property to her, and he failed to do this, and took, instead of a conveyance to his wife, a conveyance to himself of the property for which the exchange of his wife's property had been made, there was a resulting trust; and if, when the wife subsequently discovered that a deed to her husband had been taken to the property for which she had exchanged hers, she demanded that a deed to herself be executed, and the husband promised to do this, and the wife, being illiterate and inexperienced in matters of business, believed that he had done so, when in fact he had not, then upon his death the representative of her estate, or her heirs, would be entitled to have a decree that the title to the land purchased by the exchange of her property be in her estate.

2. The petitioners allege that they are the only heirs at law of Mrs. Kitty Pickron, and that they are in possession of the land which the administratrix of S. L. Pickron is about to sell, having obtained the proper order for that purpose. "An administrator can not sell property held adversely to the estate by a third person;

he must first recover possession." Civil Code, § 4033. The petitioners might ordinarily have filed a claim, which would have been sufficient to stop the sale and raise the issue of title; but having alleged that while the paper title was in the estate of S. L. Pickron the equitable title was in them, and that they had the right to a decree so declaring, they obtained standing in a court of equity to prevent the sale until their alleged rights could be adjudicated.

3. We are of the opinion that the provision of our statute (Civil Code, § 3997), allowing an administrator twelve months from the date of his qualification to ascertain the condition of the estate, is not applicable to a case like the instant one. The rule generally adopted by courts in construing statutes which give an exemption from suits, such as that just referred to, is, that where the suit does not seek to fix or establish a liability against the estate, it does not come within the statute. *Lester* v. *Stephens*, 113 *Ga.* 495, 500 (39 S. E. 109). "It is not, however, every suit against an executor or administrator which falls within this statutory provision. To fall within its provisions, it must be against the personal representative *as such*. By this we understand, not only that the suit must be against the representative in his representative capacity, but that it must seek to fasten or establish a liability upon or against property of the decedent." Alabama State Bank *v.* Glass, 82 Ala. 278 (2 So. 641). It is pointed out in the decision of the case of *Lester* v. *Stephens,* supra, that this ruling by the Supreme Court of Alabama was made in construing a statute similar to ours upon this subject of exemption of administrators from suits for twelve months.

4. But while the court properly overruled the general demurrer, certain of the grounds of special demurrer were meritorious and should not have been overruled. The grounds of special demurrer need not be taken up in detail; they are very numerous and contain frequent repetitions of criticism upon the petition. We are content with having indicated in headnote 4 the grounds of special demurrer which have sufficient merit to require a reversal of the judgment overruling them; so that when the remittitur from this court reaches the court below the petition may be amended where defective, or be dismissed in case the plaintiffs fail to amend so as to cure the defects.

*Judgment reversed. All the Justices concur.*